UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **FRANK KEVIN KENNEDY, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-4591** |
| **SHELL USA, INC., ET AL.** | **SECTION: "P" (2)** |

## ORDER AND REASONS

Before the Court are two motions: (1) a Rule 12(b)(6) Motion to Dismiss or, in the Alternative, Rule 12(e) Motion for More Definite Statement filed by Defendants Shell USA, Inc., f/k/a Shell Oil Company, Shell Offshore Inc., Shell Exploration & Production Company (collectively, "Shell Defendants") and Joseph "Jay" Hollis (R. Doc. 26); and (2) a nearly identical Rule 12(b)(6) Motion to Dismiss or, in the Alternative, Rule 12(e) Motion for More Definite Statement filed by Defendant Allen Rollins (R. Doc. 27). For the reasons set forth herein, the Motions are **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

Plaintiffs Frank Kevin Kennedy ("Plaintiff"),[1] Jacob Kennedy, and Kristen Kennedy filed this action for damages arising out of injuries allegedly sustained by Plaintiff while he was working on the "Perdido, H&P Rig 205 located on Alaminos Canyon block 857" (the "PERDIDO").[2] The parties do not dispute that the PERDIDO is a spar[3] located on the Outer Continental Shelf of the Gulf of Mexico off the coast of Texas.[4] The PERDIDO is owned by Shell Offshore Inc.[5] Plaintiff alleges that, while performing his usual duties as a "floor hand" on the PERDIDO, he was "hoisted

---

[1] Plaintiff refers to Jacob Kennedy and Kristen Kennedy collectively as "Children" and refers to himself as "Plaintiff." For the sake of clarity, the Court will do the same here and refer to Plaintiff in the singular.
[2] R. Doc. 1 at 2–3.
[3] As this Court has explained, spars "are large oil production platforms that float on the ocean's surface but are moored to large anchors in the seabed." *BW Offshore USA, LLC v. TVT Offshore AS*, 145 F.Supp.3d 658, 663 (E.D. La. 2015).
[4] R. Doc. 26-1 at 2.
[5] *Id.*; R. Doc. 1 at 1, ¶ 1(D); at 2, ¶ 4.

up by a man rider above the monkey board when suddenly and without warning his secondary cable was hung up on the fingers of the monkey board which engaged the brake causing him to be pulled violently by the man rider winch."[6] Plaintiff generally asserts the following allegations as to all Defendants:

   a. Failing to provide a safe place to work;
   b. Failing to provide a seaworthy vessel;
   c. Failing to warn of unsafe and/or unseaworthy conditions;
   d. Failing to provide an adequate and/properly trained crew;
   e. Failing to train and supervise its employees, agents and representatives;
   f. Failing to follow applicable safety guidelines and regulations;
   g. Failing to comply with working time regulations; and
   h. Failure to discover hazardous conditions aboard the vessel;
   i. Failure to warn of known hazardous conditions aboard the vessel;
   j. Failure to intervene to correct unsafe and hazardous conditions aboard the vessel;
   k. Gross, willful and wanton disregard for safety of Plaintiff.[7]

In his Complaint, Plaintiff alleges that his claims arise under 46 U.S.C. § 30104 (the "Jones Act") and the General Maritime Law of the United States of America.[8] In his Opposition to Defendants' Motions, however, Plaintiff represents that the Outer Continental Shelf Lands Act applies to his claims.[9]

## II.   LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state

---

[6] R. Doc. 1 at 3, ¶ 11. Plaintiff alleges that he was employed by Helmerich & Payne Inc.; Helmerich & Payne International Drilling Co.; and Helmerich & Payne Offshore, LLC, all of which are no longer parties to this litigation. *Id.* at 1.
[7] *Id.* at 3, ¶ 12.
[8] *Id.* at 2, ¶ 2. Plaintiff further alleges that he was a seaman or alternatively a longshoreman pursuant to the Longshore Harbor Worker's Compensation Act ("LHWCA"). *Id.* at 2, ¶ 6.
[9] R. Doc. 32 at 4–5. Plaintiff filed identical Oppositions in response to Defendants' Motions. R. Docs. 32, 33. Defendants filed an Omnibus Reply in Support of their Motions. R. Doc. 36.

a claim for relief that is plausible on its face."[10] A claim is "plausible on its face" when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[11] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[12] The court need not, however, accept as true legal conclusions couched as factual allegations.[13] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[14] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, that is, where the plaintiff has "failed to raise a right to relief above the speculative level," the court must dismiss the claim.[15]

Generally, "[a]lthough a district court primarily looks to the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, there are other sources it may consider."[16] Indeed, "a district court may take into account documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."[17]

### B. Federal Rule of Civil Procedure 12(e)

Federal Rule of Civil Procedure 12(e) provides that a party may seek a more definite statement if a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." A Rule 12(e) motion should only be granted when the complaint is "so excessively

---

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).
[11] *Id.*
[12] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).
[13] *Ashcroft*, 556 U.S. at 678.
[14] *Id.*
[15] *Lormand*, 565 F.3d at 255–57; *Jackson v. City of Hearne, Tex.*, 959 F.3d 194, 205 (5th Cir. 2020).
[16] *Meyers v. Textron, Inc.*, 540 Fed. App'x. 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007)); *Jackson*, 959 F.3d at 205.
[17] *Meyers*, 540 Fed. App'x at 409 (citing *Tellabs*, 551 U.S. at 322).

vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it."[18] As the Fifth Circuit has explained, Rule 12(e) motions are disfavored and "should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss."[19]

This Court "has considerable discretion in deciding whether to grant a Rule 12(e) motion."[20] A motion for a more definite statement is inappropriate, however, "where the information sought can otherwise be obtained by discovery" or where the "particular information defendant is seeking is within defendant's own knowledge."[21]

### III.  LAW AND ANALYSIS

#### A.  OCSLA Jurisdiction

It is undisputed that this Court has jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"). OCSLA extends federal question jurisdiction over cases "arising out of, or in connection with" any operation involving the "exploration, development, or production" of minerals on the Outer Continental Shelf ("OCS").[22] "[B]ecause jurisdiction is invested in the district courts by [the OCSLA jurisdictional] statute, '[a] plaintiff does not need to expressly

---

[18] *Phillips v. ABB Combustion Eng'g, Inc.*, No. 13-594, 2013 WL 3155224, at *2 (E.D. La. June 19, 2013) (quoting *Babcock & Wilcox Co. v. McGriff, Seibels & Williams, Inc.*, 235 F.R.D. 632, 633 (E.D. La. 2006)).
[19] *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959).
[20] *Murungi v. Tex. Guaranteed*, 646 F. Supp. 2d 804, 811 (E.D. La. 2009).
[21] *Almeida v. Panther Helicopters, Inc.*, No. 20-3280, 2022 WL 1211421, at *3 (E.D. La. Apr. 25, 2022) (quoting *Babcock & Wilcox Co.*, 235 F.R.D. at 633). The distinction between a motion to dismiss pursuant to 12(b)(6) and a motion for a more definite statement pursuant to 12(e) has been described as follows:

> If the movant believes the opponent's pleading does not state a claim for relief, the proper course is a motion under Rule 12(b)(6) rather than Rule 12(e). If the pleading is impermissibly vague, the court may act under Rule 12(b)(6) or Rule 12(e), whichever is appropriate, without regard to how the motion is denominated.

*Anthony v. Chevron U.S.A. Inc.*, No. 23-2847, 2023 WL 6464756, at *2 (E.D. La. Oct. 4, 2023) (quoting 5C WRIGHT & MILLER, FED. PRAC. AND PROC. § 1376 (3d ed.)).
[22] 43 U.S.C. § 1349(b)(1); *see also Santee v. Oceaneering Int'l, Inc.*, 95 F.4th 917, 928 (5th Cir. 2024).

invoke OCSLA in order for it to apply.'"[23] To determine whether OCSLA applies, the Fifth Circuit "uses a but-for test, asking whether: (1) the facts underlying the complaint occurred on the proper situs; (2) the plaintiff's employment furthered mineral development on the OCS; and (3) the plaintiff's injury would not have occurred but for his employment."[24]

Here, Plaintiff alleges he was injured while "performing his usual duties" on the PERDIDO. This satisfies the third prong of the but-for test. Facts pertinent to the first two prongs are not evident from Plaintiff's Complaint, but no party disputes that the Court may take judicial notice of public records of the Bureau of Ocean Energy Management and Shell's website cited by Defendants. These sources indicate the PERDIDO spar is classified as a "Permanent Deepwater Structure"[25] located on the OCS, off the coast of Texas,[26] and is described as an "oil and gas production hub."[27] Thus, the PERDIDO is unquestionably an OCSLA covered situs,[28] and Plaintiff's employment on this oil and gas production hub clearly furthered mineral development on the OCS. Accordingly, all three prongs of the but-for test are satisfied, and the Court finds that it has subject matter jurisdiction over Plaintiff's tort action under OCSLA. The Court now turns to

---

[23] In re *Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (quoting *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013)).
[24] *Santee v. Oceaneering Int'l, Inc.*, 95 F.4th 917, 929 (5th Cir. 2024).
[25] R. Doc. 26-1 at 2 n. 1 (citing *Gulf of Mexico Permanent Deepwater Structures*, BUREAU OF OCEAN ENERGY MANAGEMENT (https://www.data.boem.gov/Other/DataTables/PermDeepStruc.aspx) (last accessed April 8, 2024)).
[26] Public records indicate that the Alaminos Canyon Block 857 is off the coast of Texas. *Gulf of Mexico OCS Region: OCS Operations Field Directory*, BUREAU OF OCEAN ENERGY MANAGEMENT, https://www.boem.gov/sites/default/files/documents/regions/gulf-mexico-ocs-region/resource-evaluation/Operations-Field-Directory-Oct-Dec-2023.pdf.
[27] R. Doc. 26-1 at 2 n.1 (citing *Perdido*, SHELL GLOBAL, https://www.shell.com/about-us/major-projects/perdido.html).
[28] OCSLA covers, among other situses, a device "permanently or temporarily attached to the seabed [of the OCS] ... for the purpose of exploring for, developing, or producing resources therefrom." *Barker*, 713 F.3d at 213 (citing 43 U.S.C. § 1333(a)(1)). Additionally, "in a tort action, the OCSLA situs requirement is met if the tort occurs on a platform or other OCSLA covered situs as provided in § 1333(a)(2)(A)." *Hicks v. BP Expl. & Prod.*, 308 F.Supp.3d 878, 883–84 (E.D. La. 2018) (quoting *Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784 (5th Cir. 2009) (en banc)).

OCSLA's choice of law provision to determine the law applicable to Plaintiff's claims against these Defendants.[29]

### B. OCSLA Choice of Law

OCSLA defines the body of law that governs the OCS. It "extends federal law to the subsoil and seabed of the [OCS] and all attachments thereon;" and it adopts the adjacent State's laws as "surrogate federal law," to the extent the State's laws "'are applicable and not inconsistent with' other federal law."[30] The Supreme Court recently considered how to determine which state laws meet this requirement and therefore should be adopted as federal law. The Court explained that "state laws can be 'applicable and not inconsistent' with federal law . . . only if federal law does not address the relevant issue."[31] Put differently, "[a]ll law on the OCS is federal, and state law serves a supporting role, to be adopted only where there is a gap in federal law's coverage."[32] The Court acknowledged, however, that state law may still be 'inconsistent' with federal law even absent on-point federal law.[33] In such circumstances, even if there is a gap in the federal law, state law should not be adopted as surrogate federal law.[34] Additionally, "[w]hile OCSLA was intended to apply to the full range of disputes that might occur on the OCS, it was not intended to replace general maritime law."[35] Thus, if both OCSLA and general maritime law could apply, then "the case is to be governed by general maritime law."[36]

---

[29] *Hosey v. Shell Oil Co.*, 494 F.Supp.3d 381, 387 (E.D. La. 2020) ("Once OCSLA jurisdiction is established, as it is here, the Court generally turns to the statute's choice of law provision to determine the law applicable to particular claims.").
[30] *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S.Ct. 1881, 1886; 43 U.S.C. § 1333(a)(1), (a)(2)(A).
[31] *Parker Drilling Mgmt. Servs., Ltd.*, 139 S.Ct. at 1889.
[32] *Id*. at 1892.
[33] *Id.* at 1892 n.2 ("Of course, it is conceivable that state law might be "inconsistent" with federal law for purposes of § 1333(a)(2) even absent an on-point federal law. For example, federal law might contain a deliberate gap, making state law inconsistent with the federal scheme. Or, state law might be inconsistent with a federal law addressing a different issue. We do not foreclose these or other possible inconsistencies.").
[34] *See id.*
[35] *Tenn. Gas Pipeline v. Hous. Cas. Ins. Co.*, 87 F.3d 150, 154 (5th Cir. 1996).
[36] *Id.*

Here, Defendants argue that pursuant to OCSLA, "Texas law generally applies in tort cases arising on fixed platforms off the coast of Texas."[37] Plaintiff's Opposition is devoid of any meaningful choice-of-law analysis.[38] And while neither the Complaint nor Plaintiff's Opposition are models of clarity, in his Opposition, Plaintiff appears to argue that his Complaint includes state-law negligence and premises liability claims against these Defendants.[39]

To determine whether state law applies to a dispute arising under OCSLA, courts apply the three-part test articulated in the Fifth Circuit decision *Union Texas Petroleum v. PLT Engineering*.[40] For state law to apply, "(1) [t]he controversy must arise on a situs covered by OCSLA (i.e., the subsoil seabed, or artificial structure permanently or temporarily attached thereto);" "(2) [f]ederal maritime law must not apply of its own force;" and "(3) [t]he state law must not be inconsistent with federal law."[41] For the following reasons, the Court finds all three parts are satisfied here, and therefore Texas law governs Plaintiff's claims against these Defendants.

The threshold question under this three-part test is whether maritime law applies of its own force, i.e., whether a plaintiff's claims sound in admiralty.[42] Indeed, if maritime law applies, then the claims are governed by maritime law, and the remaining steps of the choice-of-law inquiry are moot.[43] In order for maritime law to apply in an OCSLA tort action such as this one, "there must

---

[37] R. Doc. 26-1 at 5 (citing *Lafosse v. Anadarko Petroleum Corp.*, No. 6:16-CV-00364, 2018 WL 1412786, at *3–4 (W.D. La. Feb. 28, 2018), *report and recommendation adopted*, No. 6:16-CV-00364, 2018 WL 1404412 (W.D. La. Mar. 20, 2018)).
[38] Plaintiff does not argue that his Complaint sufficiently alleges that the spar is a vessel or that general maritime law or the Jones Act apply to his claims.
[39] R. Doc. 33 at 5.
[40] *Grand Isle Shipyard, Inc.*, 589 F.3d at 784 (citing *Union Tex. Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1047 (5th Cir. 1990)).
[41] *Id.* at 784 n.3. As explained above, the third prong of this test is informed by the U.S. Supreme Court's decision in *Parker Drilling*. *See, e.g., Hosey*, 494 F.Supp.3d at 387 (citing *Parker Drilling*, 139 S. Ct. at 1889).
[42] *Hicks*, 308 F.Supp.3d at 886 (citing *Union Tex. Petroleum Corp.*, 895 F.2d at 1047).
[43] *BW Offshore USA, LLC*, 145 F.Supp.3d at 662 (citing *Grand Isle Shipyard*, 589 F.3d at 789 n. 9).

be both a 'maritime situs and a connection to traditional maritime activity.'"[44] The maritime situs requirement can be satisfied either by showing that the tort "occurred on navigable water," or if the injury is suffered on land, that it was "caused by a vessel on navigable water" such that the Admiralty Extension Act applies.[45]

      Here, Plaintiff alleges he was injured while performing his usual duties on the PERDIDO.[46] All parties agree the PERDIDO is a spar,[47] and the Court took judicial notice that the PERDIDO is considered a "Permanent Deepwater Structure."[48] Moreover, as the Fifth Circuit has stated, "spars . . . are not vessels because they are anchored to the seabed and are not intended to be moved."[49] No party has argued otherwise in the present case.[50] Accordingly, because an incident occurring on a fixed platform does not occur on navigable water, and because there is no allegation that this incident was caused by a vessel on navigable water, the Court finds that the maritime situs requirement is not satisfied here.[51] Failure to satisfy the maritime situs requirement alone renders

---

[44] *Id.* (citing *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 215 (5th Cir. 2013)).
[45] *Barker*, 713 F.3d at 215 (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). The Admiralty Extension Act states that the admiralty and maritime jurisdiction of the United States "extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." *Willis v. Barry Graham Oil Servs. LLC*, 636 F.Supp.3d 684, 691 (W.D. La. 2022) (citing 46 U.S.C. § 30101(a)). "If the Admiralty Extension Act does apply, then an injury on land caused by a vessel on navigable water will be governed by maritime law." *Id.* (citing *Delozier v. S2 Energy Operating, LLC*, 498 F. Supp. 3d 884, 891–92 (E.D. La. 2020)). If it does not, then such an injury would be covered by adjacent state law under OCSLA's choice of law provision. *See id.*
[46] R. Doc. 1 at 3, ¶ 11.
[47] *See supra* note 3 (explaining that spars "are large oil production platforms that float on the ocean's surface but are moored to large anchors in the seabed").
[48] R. Doc. 27-1 at 2; R. Doc. 33 at 5.
[49] *Earnest*, 90 F.4th at 806 (citing *Fields*, 182 F.3d at 355, 358). The relevant inquiry for determining vessel status "is whether the watercraft's use as a means of transportation on water is a practical possibility or merely a theoretical one." *Riley v. Alexander/Ryan Marine Serv. Co.*, 983 F.Supp.2d 884, 891 (S.D. Tex. 2013) (citing 1 U.S.C. § 3). As stated by district courts in this circuit, the Supreme Court has explained that "assuming a structure is not permanently moored," "a structure is not practically capable of maritime transportation 'unless a reasonable observer, looking to the [structure's] physical characteristics and activities, would consider it designed to a practical degree for carrying people or things over water.'" *Id.* (citing *Lozman v. City of Riviera Beach*, 568 U.S. 115, 122 (2013)).
[50] Plaintiff's claims that he is a seaman and the PERDIDO is a vessel are conclusory and insufficient to support a claim *See, e.g.*, *Parkman v. W&T Offshore, Inc.*, 547 F. Supp. 3d 536, 544 (M.D. La. 2021) (citing In re *Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010)).
[51] *Lafosse*, 2018 WL 1412786, at *3.

maritime law inapplicable to this OCSLA tort action. The Court now turns to the remaining two parts of the choice-of-law analysis to determine whether state law applies.

Under Fifth Circuit caselaw, "the OCSLA situs requirement is met if the tort occurs on a platform or other OCSLA covered situs."[52] This Court previously determined that the PERDIDO is an OCSLA covered situs.[53] For the reasons explained above, the situs requirement is once again met here. And the third requirement—that the state law must not be inconsistent with federal law—is also satisfied. As the Supreme Court has explained, "state laws can be 'applicable and not inconsistent' with federal law . . . only if federal law does not address the relevant issue."[54] No party has argued that federal law addresses the issue,[55] and no party has argued that the applicable Texas law otherwise conflicts with federal law. Thus, the Court assumes that Texas law, as the law of the adjacent state, is adopted as surrogate federal law under OCSLA.[56]

### C. OCSLA's Application of Texas Law

In his Complaint, Plaintiff states that he "sustained injuries as a result of a defect or vice in the condition" of the PERDIDO and/or "the negligence of Defendants and their agents, representatives and employees."[57] In his Opposition, Plaintiff argues that "[i]n the context of Plaintiff's claims, the facts pled put Shell on notice Plaintiff complains of both: 1) the conditions

---

[52] *Grand Isle Shipyard, Inc.*, 589 F.3d at 987 (citing *Rodrigue*, 395 U.S. at 352). This Court has noted that a spar is unquestionably a covered situs under OCSLA. *Hicks*, 308 F. Supp. 3d at 886.
[53] *See supra* notes 25–28 and accompanying text.
[54] *Parker Drilling Mgmt. Servs., Ltd.*, 139 S.Ct. at 1889.
[55] In his Opposition, Plaintiff briefly mentions the Longshore Harbor Worker's Compensation Act ("LHWCA"). R. Doc. 32 at 5. Generally, section 905(b) of the LHWCA preserves a longshoreman's claim in general maritime against a third-party *vessel* owner. *See* 33 U.S.C. § 905(b); *Willis v. Barry Graham Oil Serv. LLC*, 636 F.Supp.3d 684, 692 (W.D. La. 2022). But section 905(b) claims are limited to maritime torts and only cognizable in admiralty; accordingly, maritime law must apply for Plaintiffs to properly bring a section 905(b) claim against Defendants, and as discussed herein, maritime law does not apply. *See id.*; *May v. Transworld Drilling Co.*, 786 F.2d 1261, 1264 (5th Cir. 1986).
[56] *See, e.g.*, *Hosey*, 494 F.Supp.3d at 387 (stating that "the Court assumes as the parties do that Louisiana law governs the question of Shell's negligence because federal law does not address the issue").
[57] R. Doc. 1 at 3, ¶ 11.

of the premises of the Perdido; and 2) the negligence of Shell in failing to discover, warn, and intervene to correct hazardous conditions onboard the Perdidio [sic]."[58]

Under Texas law, the elements of a negligence claim are (1) a legal duty on the part of the defendant; (2) breach of that duty; and (3) damages proximately resulting from that breach.[59] To prevail on a premises liability claim, a Texas plaintiff must prove four elements: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner or occupier's failure to use such care proximately caused the plaintiff's injury.[60]

### 1. Shell Offshore Inc.

Defendant Shell Offshore Inc. admits that it owns the PERDIDO but argues that Plaintiff's Complaint contains only non-specific, conclusory allegations "suggesting that Plaintiff may be attempting to assert a premises liability claim for 'a vice or a defect'" in the PERDIDO, and that Plaintiff has failed to specifically allege such a vice or defect. Defendants further argue that Plaintiff has failed to allege that Shell Offshore Inc. committed any other acts or omissions related to Plaintiff's injury. In response, Plaintiff contends that he "specifically pled" that he was harmed by the "defective cable and rigging equipment."[61] Defendants respond that Plaintiff's claims fail because "the man-rider's emergency brake allegedly did its job, stopping [Plaintiff]'s movement in the presence of a danger, i.e., a tangled secondary cable," and that a cable is not defective simply because it becomes tangled.[62]

---

[58] R. Doc. 33 at 4.
[59] *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).
[60] *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex. 2000).
[61] R. Doc. 33 at 3.
[62] R. Doc. 36 at 2.

Here, Plaintiff alleges Shell Offshore Inc. owned the PERDIDO. Plaintiff further alleges that, while working on the PERDIDO, he was injured while being "hoisted up by a man rider," and that his "secondary cable became hung up on the fingers of the monkey board which engaged the brake."[63] This resulted in Plaintiff being "pulled violently by the man rider winch."[64] Plaintiff further alleges this accident was caused by a "defect or vice in the condition" of the PERDIDO "and/or the negligence of the Defendants and their agents, representatives and employees."[65] The Complaint also contains a list of "acts and/or omissions" Plaintiff contends Defendants committed, causing the accident and his injuries.[66] The list includes, *inter alia*, failing to provide a safe place to work, failing to warn of unsafe conditions, failing to discover hazardous conditions, failing to warn of known hazardous conditions, and failing to intervene to correct unsafe and hazardous conditions.[67] Considering the Complaint in its entirety and accepting all facts as true, the Court finds that Plaintiff's allegations, while sparse, plausibly state a claim for relief against Shell Offshore Inc. for negligence and premises liability.

**2. Shell USA, Inc. and Shell Exploration & Production Company**

As Defendants Shell USA, Inc. and Shell Exploration & Production Company point out, Plaintiff's Complaint contains no specific factual allegations pertaining to any alleged duty, or acts or omissions, on the part of either of them. Rather, Plaintiff only mentions both entities once, by alleging their states of incorporation and principal places of business.[68] And while Plaintiff's Complaint contains a list of 12 acts or omissions as to all Defendants, such allegations are insufficient to state a claim for relief against Shell USA, Inc. and Shell Exploration & Production

---

[63] R. Doc. 1 at 3, ¶ 11.
[64] *Id.*
[65] *Id.*
[66] *Id.* at 3, ¶ 12.
[67] *Id.*
[68] R. Doc. 1 at 1, ¶¶ 1(A)–(C).

Company. Indeed, "legal conclusions can provide the framework of a complaint," but "they must be supported by factual allegations."[69] Here, Plaintiff's Complaint contains no factual allegations tying Defendants Shell USA, Inc. or Shell Exploration & Production Company to the alleged accident. Accordingly, Defendants' Motion is granted as to these Defendants.[70]

### 3. Defendants Rollins and Hollis

The Court reaches the same conclusion as to Defendants Hollis and Rollins, who Plaintiff collectively refers to as "Company Man."  Defendant Rollins argues that the only allegation against him is that he "had an emergency which required shift changes."[71] And as to Defendant Hollis, Defendants argue that the only allegations related to him are his address and the fact that he was "moved to work the day shift."[72] Defendants further argue that neither Rollins nor Hollis is alleged "to have committed any particular act or omission causally related to Plaintiff's alleged injuries;" nor are they alleged to have owned the premises.[73]

In his Complaint, Plaintiff's only substantive allegation specifically related to Defendants Hollis and Rollins (or "Company Man") is that "Company Man was in charge of overseeing the entire disassembly operation."[74] Plaintiff also alleges that he "was instructed to strap down the

---

[69] *Kronlage Family Ltd. P'ship v. Eagan Ins. Agency, LLC*, No. CV 22-959, 2023 WL 2018019, at *3–4 (E.D. La. Feb. 15, 2023).

[70] As Judge Lemelle recently observed, because "a short and plain statement of the claim showing that the pleader is entitled to relief" is required under Rule 8, "as to each named defendant in a suit, a plaintiff must plausibly plead factual support for a cause of action." *Sessums v. Shell USA, Inc.*, No. 24-104, 2024 WL 1533457 (E.D. La. Apr. 9, 2024) (citing Fed. R. Civ. P. 8(a)(2)). "Accordingly, plaintiffs should avoid 'a complaint which includes multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.'" *Id.*

[71] R. Doc. 27-1 at 5.

[72] R. Doc. 26-1 at 6.

[73] *Id.* Citing to Texas law addressing employee liability, Defendants also argue that Plaintiff has failed to allege facts sufficient to give rise to an inference that Defendants Hollis and Rollins could be personally liable. R. Doc. 36. In his Complaint, Plaintiff does not identify the entity with which "Company Man" is employed, although Plaintiff states in his Opposition that Company Man was "employed and supervised" by "Shell employees." R. Doc. 33 at 3. Generally, as district courts have recognized, the "term 'company man' does not refer definitively to either an employee or an independent contractor." *Snider v. Nomac Drilling LLC*, No. 9:08CV234, 2010 WL 11530870, at *5 (E.D. Tex. Jan. 13, 2010) (citing *Francis v. Coastal Oil & Gas Corp.*, 01–01–00457–CV, 130 S.W.3d 76, (Tex. App. 2003)). Since the relationship between Defendants is unclear, Court declines to decide the issue at this stage.

[74] R. Doc. 1 at 2, ¶ 10.

weight bucket to continue the disassembly process," but Plaintiff does not identify who gave him this instruction; nor does Plaintiff allege how the instruction is causally connected to his injury. Plaintiff's allegations are insufficient to allege a plausible claim against Defendants Rollins or Hollis.[75]

### D. The Jones Act and General Maritime Law

Plaintiff's Complaint attempts to raise claims under the Jones Act and general maritime law; but in his Opposition, Plaintiff acknowledges OCSLA applies to this case.[76] As explained above, OCSLA's choice-of-law analysis dictates that Texas law applies to this action, as the accident occurred on a fixed platform (rather than a vessel). Accordingly, Plaintiff's purported claims under the Jones Act and general maritime law must be dismissed.

### E. Amendment

In Opposition to Defendants' Motions, Plaintiff requests leave to amend his Complaint. Although Defendants initially requested a more definite statement (and therefore amendment) as an alternative to dismissal, Defendants now assert that Plaintiff has conceded that amendment would be futile by suggesting in his Opposition that he has nothing more to add.[77]

Pursuant to Federal Rule of Civil Procedure 15(a), "leave to amend shall be freely given when justice so requires, and should be granted absent some justification for refusal."[78] In deciding whether to grant leave to amend, courts consider whether amendment would be futile or whether there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party.[79]

---

[75] Indeed, plaintiffs must "nudge their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.
[76] R. Doc. 32 at 4; R. Doc. 33 at 4.
[77] R. Doc. 36 at 3.
[78] *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).
[79] *Id.*

Finally, Rule 15(a) applies when a plaintiff has "expressly requested" to amend, even when the request is included in an opposition to a motion to dismiss, rather than "a properly captioned motion paper."[80]

Upon review of Plaintiff's Opposition, it appears Plaintiff may possess more information than he has currently alleged. For example, Plaintiff argues he "identified that there was an overt lack of congruency and consistency with the safety, supervision and oversight by the Shell employees and the Company men they employed and supervised. Namely, a failure to observe the operations and some [sic] with requisite experience in place to supervise the operations."[81] Although Plaintiff's Complaint presently contains no factual support for such allegations, Plaintiff's statements indicate he may have additional information that he could add to his Complaint such that amendment may not be futile. Accordingly, Plaintiff's request for leave to amend is granted.

### F. Motion for a More Definite Statement

Because the Court granted Defendants' Motions to Dismiss as to the claims against Defendants Shell USA, Inc., Shell Exploration & Production Company, Rollins, and Hollis, these Defendants' request for a more definite statement is denied as moot. As to Defendant Shell Offshore Inc., to the extent Defendant maintains its request for a more definite statement, such request is denied. The Court does not find that Plaintiff's allegations are so vague or ambiguous such that Shell Offshore Inc. cannot reasonably prepare a response. Additionally, the information sought by Shell Offshore Inc. is "largely limited to that which can be obtained in discovery."[82] Accordingly, Shell Offshore Inc.'s request is denied.

---

[80] *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (5th Cir. 1988)).
[81] *Id.* at 3.
[82] *See Almeida*, 2022 WL 1211421, at *3 (quoting *Babcock*, 235 F.R.D. at 633).

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Motions filed by Shell Defendants and Jay Hollis (R. Doc. 26) and Allen Rollins (R. Doc. 27) are **GRANTED IN PART AND DENIED IN PART.**

Plaintiff's negligence and premises liability claims against Shell Offshore Inc. remain.

Plaintiff's negligence and premises liability claims against Shell USA, Inc., Shell Exploration & Production Company, Jay Hollis, and Allen Rollins are **DISMISSED WITHOUT PREJUDICE.** Plaintiff may amend the Complaint within 14 days of the date of this Order to the extent Plaintiff can remedy the deficiencies identified herein.

To the extent Plaintiff alleges claims arising under general maritime law and the Jones Act against any of the Defendants discussed herein, such claims are **DISMISSED WITH PREJUDICE.**

Defendants' alternative request for a more definite statement is **DENIED** as to Shell Offshore Inc., and **DENIED AS MOOT** as to Shell USA, Inc., Shell Exploration & Production Company, Jay Hollis, and Allen Rollins.

New Orleans, Louisiana, this 5th day of June 2024.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**